# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG STRICKLAND, | : | No. 3:08cv1792 |
|     Plaintiff | : | |
| | : | (Judge Munley) |
| | : | |
|     v. | : | |
| | : | |
| MAHONING TOWNSHIP, | : | |
| MAHONING TOWNSHIP POLICE | : | |
| DEPARTMENT, | : | |
| OFFICER AUDIE M. MERTZ, | : | |
| RALPH FAHRINGER, and | : | |
| JESSICA FAHRINGER, | : | |
|     Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is defendants' motion to dismiss the instant complaint. (Doc. 7). Having been fully briefed, the matter is ripe for disposition.

**Background**

This case arises out of an encounter between the plaintiff, his brother and a cousin and police on November 18, 2006. (Complaint (hereinafter "Complt.") (Doc. 1) at ¶ 20). On that date, plaintiff was working on the floor of a nightclub in Allentown, Pennsylvania. (Id.). The owner of that nightclub, Jimi Rose, asked plaintiff to help him return three puppies he had purchased the previous evening from Defendants Ralph and Jessica Fahringer. (Id.). Rose needed plaintiff to help him lift the puppies into and out of Rose's truck. (Id.). Plaintiff agreed. (Id. at ¶ 21). Plaintiff's brother Samuel Strickland, who was depending on plaintiff for his ride

home, accompanied the two men on their trip to return the puppies. (Id. at ¶ 22). All three men are black. (Id.).

The Fahringer's home is in Carbon County, Pennsylvania. (Id. at ¶ 24). Rose drove to their home and pulled into the driveway. (Id.). When they arrived, plaintiff got out of the truck to remove the puppies. (Id. at ¶ 25). As he did so, Ralph Fahringer opened the door about six inches. (Id.). Plaintiff told Fahringer he was there to return the puppies. (Id. at ¶ 26). When he turned to begin removing them, Fahringer pointed a rifle out of the doorway, told plaintiff to leave the puppies on the driveway and ordered him off the property. (Id.). Rose got out of the truck, told Fahringer he was bringing the dogs back and demanded a refund. (Id. at ¶ 27). Fahringer cocked his rifle and aimed it at Rose. (Id.).

At that point, plaintiff got back inside of the truck and told Rose to join him. (Id. at ¶ 28). Rose did so, and began backing out of the driveway. (Id.). Rose called 911 to report the incident. (Id. at ¶ 29). The 911 dispatcher told him to return to the area near the Fahringers' home and wait for police to arrive. (Id.). He did so, parking in the street in front of the home next door. (Id.).

Defendant Mertz, a Mahoning Township police officer, arrived at the scene approximately twenty seconds later. (Id. at ¶ 30). Officers from three other departments arrived shortly thereafter. (Id.). Mertz told the other officers to search the plaintiff, Rose, Samuel Strickland, and Rose's truck. (Id. at ¶ 31). Mertz went into Fahringer's home and spoke with both Fahringers. (Id.). Meanwhile, another

2

officer ordered the three men out of the truck. (Id. at ¶ 32). They searched the men and the truck, and found no weapons. (Id.). Despite the cold weather, police forced the three men to wait outside in the cold for Mertz to return from his conversation with the Fahringers. (Id. at ¶ 33). Plaintiff needed to use the bathroom, and asked an officer if he could do so. (Id. at ¶ 34). The officer refused him permission, and plaintiff was forced to urinate and defecate on himself. (Id.).

When Mertz returned, he informed the other officers that plaintiff would receive a citation, but that the other two men would be arrested. (Id. at ¶ 35). Police took the three men to the Mahoning Township Police Department, where they questioned Rose and Samuel Strickland. (Id. at ¶ 36). Plaintiff was finally able to use the bathroom at the police station. (Id. at ¶ 37). When he reemerged, officers made jokes at his expense. (Id. at ¶ 38). Police issued plaintiff a citation for criminal trespass and making terroristic threats and then released him. (Id. at ¶ 39). They called plaintiff a cab, making jokes about the cost of a cab from Mahoning Township to Allentown. (Id. at ¶ 40). Instead, plaintiff used his cellphone to call his wife. (Id. at ¶ 41). She came to get him, and plaintiff cancelled the cab. (Id.). Plaintiff pled guilty to criminal trespass on February 1, 2007. (Id. at ¶ 41).

Plaintiff filed the instant complaint on September 29, 2008. The complaint consists of three counts. Count I, brought pursuant to 42 U.S. §§ 1981, 1982 and 1983 against Defendants Mertz and Mahoning, alleges that the defendants violated plaintiff's constitutional rights in a number of ways. The count contends that plaintiff

3

was the victim of an unlawful arrest, suffered from an unreasonable search and seizure, suffered cruel and unusual punishment, faced excessive bail, had his free speech rights unlawfully restricted, was denied his liberty without due process of law, suffered from the use of unreasonable force, faced racial discrimination and racial profiling, and had his right to travel unlawfully restricted. Count II, brought pursuant to 42 U.S.C. § 1985, alleges a conspiracy to violate plaintiff's constitutional rights between Defendants Mertz, Mahoning Township, and Ralph & Jessica Fahringer. Count III alleges supervisory liability pursuant to 42 U.S.C. § 1986 against Defendants Mahoning Township, Zenko, Keiper, Eidem, Blocker, Snyder, Stawnyczy, Green, Smith and Kocher.

Plaintiff also filed a motion for leave to proceed *in forma pauperis*. (Doc. 2). As a result, the court gave the complaint an initial screening to determine whether process should issue. The court concluded that plaintiff's claims for false arrest were frivolous and should be dismissed. (See Doc. 5). That decision also led to the dismissal of the complaint against Bruce Keiper, Patricia Snyder, George Stawnyczyj, Mark Zenko, Dawn Blocker and Charles Eidem. The court authorized service of the complaint on the remaining defendants and the remaining claims. Once served with the complaint, defendants Mahoning Township, Mahoning Township Police Department and Audie Mertz filed a motion to dismiss the complaint. (Doc. 7). The parties then briefed the issue, bringing the case to its present posture.

**Jurisdiction**

Because plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, we have

4

jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). We have jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

**Legal Standard**

Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). When a defendant files such a motion, all well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665-666 (3d Cir. 1988) (citing Estate of Bailey by Oare v. County of York, 768 F.3d 503, 506 (3d Cir. 1985), (quoting Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir. 1977) (per curiam)). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad.

of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). The complaint is properly dismissed "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 520-521 (1972) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court will apply this standard when addressing Defendant Carbon County's motion.

**Discussion**

Defendants argue that the claims against them should be dismissed on several grounds. The court will address each in turn.

### A. Mahoning Township Police Department

Defendants argue that any claims against the police department should be dismissed. Plaintiff makes no specific allegations against the department, and even if he did the department and the township are the same legal entity for the purposes of the instant action. Plaintiff agrees that his claims are more properly directed at the township. He does not oppose this aspect of the motion. The court will therefore grant defendants' motion on this point and dismiss the claims against the police department.

### B. Claims Against Officer Mertz in his Official Capacity

Defendants next contend that plaintiff's claims against Officer Mertz in his official capacity must be dismissed, as they are duplicative of plaintiff's claims against the municipality itself. The court agrees. An official-capacity suit is generally

6

merely another way of pleading an action against an entity of which an officer is an agent. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Such a suit is properly treated as a suit against the entity. Id. at 166. The court will therefore dismiss the claims against the Mahoning Township officials in their official capacities.

**C. Claims for Punitive Damages Against the Municipal Defendants**

Defendants next seek dismissal of plaintiff's claims for punitive damages against the municipal defendants. They argue that punitive damages cannot be obtained against a municipality, and as such cannot be obtained against individual defendants in their official capacities. Moreover, the conduct alleged against the individual municipal defendant is not reckless or in callous disregard of federally guaranteed rights. As such, defendants contend, punitive damages are not available against those defendants. Plaintiff agrees that punitive damages are not available against the municipality, but argues that punitive damages could be awarded against Officer Mertz in his individual and official capacity.

The court finds that punitive damages are not available against Officer Mertz in his official capacity. As explained above, a suit against an individual in her official capacity is a suit against the municipality. Since a municipality cannot be liable for punitive damages, neither can an individual sued in her official capacity. The court will deny the motion, however, as it applies to Officer Mertz in his individual capacity. "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or

7

when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). The court finds that if plaintiff could prove his allegations that Officer Mertz deprived him of federally protected rights after his arrest and while holding him in custody, and that they were motivated by a racial animus, he could establish a reckless and callous indifference to his rights. The court will deny the motion on this point.

**D. Rooker-Feldman Doctrine**

Defendants contend that plaintiff's claims are barred by the Rooker-Feldman doctrine, which precludes lower federal courts from exercising appellate jurisdiction over final state court judgments. Lance v. Dennis, 546 U.S. 459, 463 (2006). Defendants argue that plaintiff pled guilty to criminal trespass, and cannot now recover damages based on that conviction. Plaintiff argues that his claims for damages are based on constitutional violations that occurred separate from his conviction, and are thus not barred by the doctrine.

Plaintiff here brings his § 1983 and § 1985 claims for: 1) unlawful arrest; 2) unreasonable search and seizure; 3) cruel and unusual punishment; 4) limits on his freedom of speech; 5) deprivations of his liberty without due process of law; 6) summary punishment; 7) racial discrimination and racial profiling; and 8) unlawful restrictions on his right to travel. In an earlier decision, the court determined that some of these claims could be combined, finding that the following claims remained: 1) unlawful arrest; 2) unreasonable search and seizure; 3) cruel and unusual

8

punishment; and 4) racial profiling (equal protection). The court found that plaintiff's unlawful arrest claims were frivolous and should be dismissed. As such, plaintiff has claims remaining for unreasonable search and seizure, cruel and unusual punishment, and equal protection (racial profiling). The court must determine whether any of these remaining claims are barred by the Rooker-Feldman doctrine.

The court concludes that the doctrine is inapplicable to plaintiff's three remaining constitutional claims. Plaintiff's equal protection claim is not the equivalent of an appeal of a final state-court judgment. To prevail on an equal protection claim in the racial-profiling context, plaintiff must establish that he is a member of a protected class and similarly situated to others not within the protected class who were not prosecuted. See Carrasca v. Pomeroy, 313 F.3d 828, 834 (3d Cir. 2002). Plaintiff does not need to establish that he was innocent of the underlying charge, or that the state court judgment was invalid to prevail. Instead, he must show that others similarly situation and not within the protected class were not prosecuted. Plaintiff asserts that the Fahringers were similarly situated, not members of a protected class, and not prosecuted. The doctrine therefore does not apply to bar this claim.

In the same way, plaintiff's unreasonable search and seizure claim is not barred by the Rooker-Feldman doctrine, as he does not need to challenge the adequacy of his conviction to prevail on that claim. A defendant's guilt on charges against him is "simply irrelevant to the legality of the search under the fourth

9

amendment or to [his] right to compensation from state officials under section 1983." Haring v. Prosise, 462 U.S. 306, 316 (1983). Plaintiff's cruel and unusual punishment claim is likewise not affected by the Rooker-Feldman doctrine. Whether he suffered cruel and unusual punishment does not depend on the adequacy of the grounds used to hold him.

**E. Supervisory Liability**

Count III of plaintiff's claim alleges supervisory liability against Mahoning Township, Carbon County, Franklin Township and Police Chief Zenko. Defendants here claim that plaintiff has alleged only respondeat superior liability on this count and have failed to point to any policy or custom that would expose these supervisors to liability.

Under the law, a municipality cannot be liable for civil rights violations on a respondeat superior basis. Instead, a plaintiff must establish that the violation occurred pursuant to the municipality's policy or custom. Monell v. Department of Social Svcs., 436 U.S. 658, 694 (1978). In the instant case, the defendants argue that plaintiff has not alleged a township policy or custom that caused the harm at issue. The court is unconvinced. The complaint alleges that plaintiff faced discrimination pursuant to "the widespread and pervasive policy, custom, practice and usage" of racial discrimination. (Complt. at § 78). These allegations are sufficient to survive a motion to dismiss.

**F. Section 1985 Claim**

10

Defendants argue that plaintiff's conspiracy claim, brought pursuant to 42 U.S.C. § 1985, should be dismissed. That section provides a cause of action for conspiracy to violate civil rights. The elements of such a cause of action are: 1) a conspiracy; 2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; 3) an act in furtherance of the conspiracy; and 4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997) (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

In his complaint, plaintiff alleges that the defendants conspired with each other to violate his civil rights. (Complt. at ¶ 67). Plaintiff avers that defendants conspired to achieve his false arrest and deprive him of his due process rights because he was black. (Id.). These actions, the complaint contends, caused plaintiff injury. (Id. at ¶ 71). Plaintiff points to specific acts and to specific rights which those acts violated. Read broadly, then, the complaint makes out a claim for conspiracy against the moving defendants. The court will deny the motion on this point.

**G. Qualified Immunity**

Finally, the individual defendant, Officer Mertz, contends that he is entitled to qualified immunity for the actions about which plaintiff complains. Qualified immunity can serve as a defense for an individual defendant accused of a civil rights violation. See Hunter v. Bryant, 502 U.S. 224, 227 (1991). Qualified immunity does not apply

where state officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Wright v. City of Philadelphia, 409 F.3d 595, 699-700 (3d Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). For a qualified immunity analysis, therefore, the court must examine: 1) whether officials violated a constitutional right and 2) whether that right was clearly established at the time. Id.

Here, the plaintiff has alleged facts which–if proved–could demonstrate that Mertz violated plaintiff's constitutional rights. If plaintiff proved such violations, qualified immunity would not be appropriate because the rights that plaintiff advances–the right to be free from racial discrimination, to be free from cruel and unusual punishment, and to be free from unreasonable search and seizure–are clearly established rights. Qualified immunity does not apply at this point.

**Conclusion**

For the reasons stated above, the court will deny the defendants' motion in part and grant it in part. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRAIG STRICKLAND, | : | No. 3:08cv1792 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| MAHONING TOWNSHIP, | : | |
| MAHONING TOWNSHIP POLICE | : | |
| DEPARTMENT, | : | |
| OFFICER AUDIE M. MERTZ, | : | |
| RALPH FAHRINGER, and | : | |
| JESSICA FAHRINGER, | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 17th day of July 2009, the defendants' motion to dismiss (Doc. 7) is hereby **GRANTED** in part and **DENIED** in part, as follows:

1) Plaintiff's claims against The Mahoning Township Police Department are dismissed;

2) Plaintiff's claims for punitive damages against the municipality are dismissed;

3) Plaintiff's claims against Officer Mertz in his official capacity are dismissed; and

4) The motion is **DENIED** in all other respects.

BY THE COURT:


s/ James M. Munley
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**