# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRAIG STRICKLAND,** | : | No. 3:08cv1792 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **MAHONING TOWNSHIP;** | : | |
| **OFFICER AUDIE M. MERTZ;** | : | |
| **RALPH FAHRINGER; and** | : | |
| **JESSICA FAHRINGER,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court is defendants' motion for summary judgment (Doc. 34). Defendant has filed a brief in support of its motion. Plaintiff has not responded to the motion or to the court's orders to do so. As the time established for responding to the motion has passed, the matter is ripe for disposition.

**Background[1]**

This case arises out of an encounter between the plaintiff, his brother and a cousin and police on November 18, 2006. (Complaint (hereinafter "Complt.") (Doc. 1) at ¶ 20). On that day, plaintiff and his brother, Samuel Strickland, were asked by a friend, James Rose, to help him return three dogs to Ralph Fahringer.

---

[1]Plaintiff did not submit a brief in opposition to the defendants' motions. As such, the court will relate only briefly the facts of the case in this section. The court will reference the relevant facts as related in the defendants' statements of material facts in the discussion section of this opinion.

(Defendant's Statement of Material Facts (Doc. ) (hereinafter "Defendant's Statement") at ¶ 1). Rose had purchased the dogs from Defendant Ralph Fahringer the day before. (Id.). Rose needed help from the Stricklands because he could not do any lifting. (Id.).

When the three men arrived at the Fahringer home, plaintiff left the car in an attempt to remove the dogs. (Id. at ¶ 2). As he did so, Fahringer confronted Rose and plaintiff with a shotgun. (Id.). Plaintiff, his brother and Rose fled the scene. (Id. at ¶ 3). They also called 911 to report the incident. (Id.). The 911 operator told police from several townships that a man with a gun was at the scene. (Id. at ¶ 4). Police arrived shortly thereafter. (Id.). Police searched plaintiff and his companions, as well as their vehicle, for weapons. (Id. at ¶ 5). Police detained the three men for questioning during this investigation. (Id. at ¶ 6).

Police asked plaintiff's brother, Samuel Strickland, for his name and identification. (Id. at ¶ 7). Samuel Strickland gave them a false name, Michael Andrews. (Id.). After Samuel Strickland gave this false information, police arrested him, handcuffed him and placed him the back of a police car. (Id. at ¶ 8). A police officer then interviewed Fahringer regarding the 911 call (Id. at ¶ 9). Police kept plaintiff and James Rose detained but not handcuffed during this period. (Id. at ¶ 10).

Police Officer Audie Mertz next contacted Assistant District Attorney Anthony Greek to relay to him the results of the investigation. (Id. at ¶ 11). Greek gave

2

Officer Mertz approval to criminally charge plaintiff's brother and James Rose and issue plaintiff a citation for criminal trespass. (Id. at ¶ 12). Mahoning Township police officers then jailed Samuel Strickland and James Rose. (Id. at ¶ 13). Plaintiff later pled guilty to the criminal charges filed against him. (Id. at ¶ 14).

Plaintiff has not produced evidence demonstrating that the policies or practices of Mahoning Township are racist, or that he was arrested for racist reasons. (Id. ¶ 16). No evidence of a conspiracy exists. (Id. at ¶ 17). None of the officers at the scene said anything racially derogatory to plaintiff or his companions. (Id. at ¶ 18). Plaintiff has no evidence that undermines the validity of the training of any of the officers who arrived on the scene. (Id. at ¶ 19). Plaintiff was not suffering from any physical ailments or conditions requiring treatment and was not taking any medication when arrested. (Id. at ¶ 20). He never asked a police officer to use the bathroom at the scene. (Id. at ¶ 21).

Plaintiff filed the instant complaint on September 29, 2008. The complaint consists of three counts. Count I, brought pursuant to 42 U.S. §§ 1981, 1982 and 1983 against Defendants Mertz and Mahoning, alleges that the defendants violated plaintiff's constitutional rights in a number of ways. The count contends that plaintiff was the victim of an unlawful arrest, suffered from an unreasonable search and seizure, suffered cruel and unusual punishment, faced excessive bail, had his free speech rights unlawfully restricted, was denied his liberty without due process of law, suffered from the use of unreasonable force, faced racial discrimination and racial

3

profiling, and had his right to travel unlawfully restricted. Count II, brought pursuant to 42 U.S.C. § 1985, alleges a conspiracy to violate plaintiff's constitutional rights between Defendants Mertz, Mahoning Township, and Ralph & Jessica Fahringer. Count III alleges supervisory liability pursuant to 42 U.S.C. § 1986 against Defendants Mahoning Township, Zenko, Keiper, Eidem, Blocker, Snyder, Stawnyczy, Green, Smith and Kocher.

Plaintiff also filed a motion for leave to proceed *in forma pauperis*. (Doc. 2). As a result, the court gave the complaint an initial screening to determine whether process should issue. The court concluded that plaintiff's claims for false arrest were frivolous and should be dismissed. (See Doc. 5). That decision also led to the dismissal of the complaint against Bruce Keiper, Patricia Snyder, George Stawnyczyj, Mark Zenko, Dawn Blocker and Charles Eidem. The court authorized service of the complaint on the remaining defendants and the remaining claims. When the Fahringer Defendants failed to respond to the complaint, the court granted plaintiff's motion for entry of default. (Id. at 18). Once served with the complaint, defendants Mahoning Township, Mahoning Township Police Department and Audie Mertz filed a motion to dismiss the complaint. (Doc. 7). The court granted that motion in part and denied it in part, leaving Mahoning Township and the Fahringers as the sole defendants in the case.

**Jurisdiction**

Because plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, the court

has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The

5

burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

In this case, the defendants filed motions for summary judgment and statements of material facts (See Docs. 61-64), but the plaintiff did not file a brief in opposition or a counterstatement of material facts. The court twice ordered the defendant to file his materials in opposition to summary judgment, but he failed to do so. (Docs. 39, 41). When a party fails to oppose a motion for summary judgment, the court, "before granting summary judgment . . . must first determine whether summary judgment is appropriate–that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." Anchorage Assocs. v. V.I. Bd. Of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990). In making that determination, the court accepts "'as true all material facts set forth by the moving party with appropriate

6

record support.'" Id. If the burden of proof on a relevant issue lies with the moving party, "this means that the district court must determine that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law." Id. If the burden of proof lies with the non-moving party, "the district court must determine that the deficiencies in the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law." Id.

**Discussion**

Defendant seeks summary judgment on several grounds. The court will address each in turn, as necessary.

**I. Claims under § 1981, 1982 and 1983**

The court earlier found that plaintiff had stated claims pursuant to 42 U.S.C. § 1981, 1982 and 1983 for 1) unreasonable search and seizure; 2) cruel and unusual punishment; and 3) equal protection. Defendants argue that summary judgment is appropriate on all these claims. The court will address each in turn.

**a. Unlawful Search and Seizure**

Defendants argue that no evidence supports plaintiff's unlawful search and seizure claim. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Terry v. Ohio, 392 U.S. 1, 8 (1968) (quoting U.S. Const. Amend 4). What the Fourth Amendment "'forbids is not all searches and seizures, but unreasonable

7

searches and seizures.'" Id. at 9 (quoting Elkins v. United States, 364 U.S. 206, 222 (1960)). "The fundamental task of any Fourth Amendment analysis is assessing the reasonableness of the government search." United States v. Sczubelek, 402 F.3d 175, 182 (3d Cir. 2005). A search violates a person's constitutional rights only when that search is unreasonable, and "[determining whether a search is reasonable 'depends on all of the circumstances surrounding the search or seizure and the nature of the seizure itself.'" Id. (quoting Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 619 (1989)).

Here, the search and seizure occurred after police stopped plaintiff and his two companions after responding to a 911 call concerning the brandishing of weapons at a residence. Courts have held that "stopping a car and detaining its occupants is a seizure under the Fourth Amendment." United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995). "Because an ordinary traffic stop is analogous to an investigative detention, it has been historically reviewed under the investigatory detention framework first articulated in Terry v. Ohio." United States v. Delfin-Clonia, 464 F.3d 392, 396 (3d Cir. 2006). That standard establishes that "'an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" Id. (quoting United States v. Valentine, 232 F.3d 350, 353 (3d Cir. 2000)). This requirement is not particularly onerous: "reasonable, articulable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less

than preponderance of the evidence,' and only a 'minimal level of objective justification' is necessary for a *Terry* stop." Id. (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000); (United States v. Sokolow, 490 U.S. 1, 7 (1989)). Still, "a police officer does have the initial burden of providing the 'specific, articulable facts' to justify a reasonable suspicion to believe than an individual has violated the traffic laws." Id. at 397. The court has to "consider whether the 'rational differences from those facts reasonably warrant [the] intrusion.'" Id. (quoting Terry, 392 U.S. at 21)). In then end, the court must "weigh 'the totality of the circumstances–the whole picture.'" (quoting Sokolow, 490 U.S. at 8).

Defendants contend that no evidence exists to support plaintiff's Fourth Amendment claims related to this stop. They insist that Officer Mertz and the other officers on the scene acted reasonably in searching the plaintiff and his companions after they arrived on the scene; they had been informed that someone had a gun there. The court finds that the search and seizure of the plaintiff was performed pursuant to a reasonable and articulable suspicion that unlawful activity was afoot. Police had received a 911 call that unlawful gun-related activity had occurred in the premises where plaintiff and his companions were stopped, and "the knowledge of the dispatcher is imputed to the officers in the field when determining the reasonableness of the *Terry* stop." United States v. Torres, 534 F.3d 207, 210 (3d Cir. 2008). Given their notice of a potentially volatile situation involving the occupants of the car, police could reasonably have concluded that a brief

9

investigatory stop was necessary to determine whether plaintiff was involved in illegal activity. The court will therefore grant summary judgment to the defendants on this claim.

### b. Cruel and Unusual Punishment

Defendants also seek summary judgment on plaintiff's claim of cruel and unusual punishment. Plaintiff's Eighth Amendment claim is based on the refusal of officers to allow him to use the bathroom, causing him to urinate and defecate on himself. The Eighth Amendment to the United States Constitution bars "cruel and unusual punishment," and the "Due Process Clause of the Fourteenth Amendment operates to provide similar protection to pre-trial detainees." Reynolds v. Wagner, 128 F.3d 166, 173 (3d Cir. 1997).[2] To prevail on an Eighth Amendment claim based, as here, on the conditions of confinement, the court "must determine if prison officials acted with 'deliberate indifference' to the inmate's health." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir. ) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). The objective inquiry is whether the inmate was "'denied the minimal civilized measure of life's necessities.'" Id. (quoting Hudson v. McMillian, 503 U.S. 1,

---

[2]Defendants contend that plaintiff's claim here about not being allowed to use the bathroom is a claim for denial of access to medical care, and thus plaintiff "must demonstrate that there was a '"deliberate indifference [on the part of the State] to serious medical needs of prisoners."'" Id. at 174 (quoting Helling v. McKinney, 509 U.S. 25, 32 (1993)). The court disagrees that plaintiff's claim is based on a denial of medical care, since plaintiff was not seeking medical treatment, but simply a chance to relieve himself. No medical treatment is necessary under those circumstances. The court concludes that the proper standard is the one related above. The distinction is of no matter, however, since plaintiff has not produced evidence that any of these defendants actually denied him the opportunity to use the bathroom.

10

9 (1992)).

The only evidence of record concerning officers' refusal to allow plaintiff to use the bathroom comes from the deposition testimony of James Rose. At his deposition, Rose testified that he thought Officer Buonaiuto had told plaintiff he could not use the bathroom. (Deposition of James Rose, Exh. A to Defendants' Supplement to Statement of Facts (Doc. 36) (hereinafter "Rose Dep.") at 151). He also testified that Officer Buonaiuto was not employed by Mahoning Township. (Id.). Officer Buonaiuto testified that he worked for Franklin Township. (Deposition of Frank Buonaiuto, Exh. C to Defendants' Supplement (Doc. 36) (hereinafter "Buonaiuto Dep.") at 19).

The evidence of record in this case indicates that none of the defendants here were involved in the decision to deny plaintiff an opportunity to use the bathroom. As this denial is the basis of plaintiff's Eighth Amendment claim, the court finds that no evidence exists by which a jury could find defendants liable for that claim. As such, the court will grant the defendants' motion on this claim.

### c. Equal Protection

Defendants also seek summary judgment on plaintiff's equal protection claim. They contend that plaintiff has no evidence to prove that his arrest either had a discriminatory effect or was motivated by a discriminatory purpose. Plaintiff alleges that he and his companions were the victims of police efforts to "entrap, set up, and unlawfully confine and punish three black men (who were arrested for being black)."

11

(Complaint (Doc. 1) at ¶ 54). Plaintiff therefore alleges that his equal protection rights were violated by racial profiling. "To make out an equal protection claim in the profiling context," a plaintiff must show that police actions "(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." Bradley v. United States, 299 F.3d 197, 205 (3d Cir. 2002). Discriminatory effect occurs when a plaintiff demonstrates that "she is a member of a protected class and that she was treated differently from similarly situated individuals in an unprotected class." Id. at 206. That effect "may be proven by naming similarly situated members of an unprotected class who were not selected for the same search or, in some cases, by submitting statistical evidence of bias." Id.

Defendants concede that plaintiff, who is African-American, is a member of a protected class, but they insist that no evidence establishes that plaintiff was treated differently from similarly situated members of an unprotected class. Accepting the facts alleged by the defendants as true–as we are required to do under these circumstances–the court finds that no evidence exists by which plaintiff could prove that his arrest was a result of racial profiling. As recounted above, no evidence exists by which a jury could conclude that the police department's actions had a discriminatory effect, since no evidence exists of others who were in the same situation as plaintiff and not arrested. Even if plaintiff could show that he and the Fahringers were similarly situated and he was arrested and they were not, no record evidence indicates that police were motivated by a discriminatory purpose. As such,

summary judgment is appropriate for the defendants on this claim and the court will grant defendants' motion.

### d. Other Grounds

Defendants also seek summary judgment on the claims against the Township, contending that plaintiff has produced no evidence to indicate that any constitutional violations he experienced were the result of a municipal policy or custom. Officer Mertz also argues that he is entitled to qualified immunity against the plaintiff's claims. The claims against these parties were predicated on the alleged violations of plaintiff's constitutional rights. As the court has found that no constitutional violations occurred and thus plaintiff could not make out a claim under any circumstances, there is no need to address the defendants' arguments here.

### e. Ralph and Jessica Fahringer

Defendants Ralph and Jessica Fahringer did not file an answer to the complaint. Plaintiff filed a motion for entry of default on February 2, 2009. (Doc. 18). The court granted this motion. (Doc. 25). The basis for liability against the Fahringers asserted in the complaint was that they had conspired with the municipal defendants to violate the plaintiff's constitutional rights. As the court has now concluded that no jury could conclude that anyone violated plaintiff's constitutional rights, a default judgment against Ralph and Jessica Fahringer is not appropriate. The court will order that this entry of default against the Fahringers be rescinded and the case against them dismissed.

**Conclusion**

For the reasons stated above, the court will grant the defendants' motion and grant them summary judgment on all of plaintiff's claims and rescind the entry of default against Ralph and Jessica Fahringer. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CRAIG STRICKLAND, : No. 3:08cv1792
        Plaintiff :
: (Judge Munley)
v. :
:
MAHONING TOWNSHIP, :
MAHONING TOWNSHIP POLICE :
DEPARTMENT, :
OFFICER AUDIE M. MERTZ, :
RALPH FAHRINGER, and :
JESSICA FAHRINGER, :
        Defendants :
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 15th day of March 2010, the defendants' motion for summary judgment (Doc. 34) is hereby **GRANTED**. The clerk's entry of default against Defendants Ralph and Jessica Fahringer (Doc. 25) is hereby **RESCINDED** and all claims against those defendants are dismissed. The Clerk of Court is directed to **CLOSE** the case.

                                                **BY THE COURT:**

                                                s/ James M. Munley
                                                **JUDGE JAMES M. MUNLEY**
                                                **UNITED STATES DISTRICT COURT**